UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COYE R. DAVENPORT,

        Plaintiff,

v.                                            Case No. 09-11793
                                            Honorable Julian Abele Cook, Jr.

ROACH OIL COMPANY, ET AL.

        Defendant.

ORDER

On May 11, 2009 the *pro se* Plaintiff, Coye R. Davenport,[1] filed a handwritten complaint, in which he accused a variety of persons and business interests of conspiring to destroy a gas well on his property. Some of the parties who were identified as Defendants (namely, Roach Oil Company ("Roach Oil"), Bigard & Huggard Drillers and its President Steve Bigard ("Bigard Defendants"), and Cementrite Services, Inc. and its President, Pat Jarman ("Cementrite Defendants")) moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, these movants filed requests for more definite statements of Davenport's claims, citing to Fed. R. Civ. P. 12(e).[2] Roach Oil also filed a motion seeking a

---

[1] Although Davenport is the only identified Plaintiff in this lawsuit, the complaint suggests that his wife is a joint property interest holder in the involved realty. The amended complaint identifies their eight children as possessing five percent working share interests in the affected land.

[2] Davenport's original complaint identified the following parties as Defendants: (1) Roach Oil Company of Amarillo, Texas; Thomas L. Roach III - President.; (2) Michigan D.E.Q.

clarification of the claims within the original complaint.

On March 12, 2010, the Court, despite having denied the motions to dismiss that had been filed by the above-named Defendants, granted their applications for more definite statements. On the same date, the Court granted the motion by Roach Oil to clarify whether this action involved claims against Thomas L. Roach, III ("Tom Roach") in his official capacity as the President of Roach Oil, as an individual, or both. Thereafter, Davenport was instructed by the Court to file an amended complaint within a period of thirty days from the date of the order. The Court also identified seven specific issues that it required Davenport to address with regard to his claims against the Defendants. Davenport's amended complaint was filed on April 13, 2010.

All of the foregoing parties (namely, Tom Roach, Roach Oil, the Bigard Defendants, and the Cementrite Defendants, collectively, the "Defendants") have filed motions to dismiss pursuant to Fed. R. Civ. P 12(e), 41(b) and 12(b)(6), contending that Davenport had failed to file his amended complaint in a timely manner. Alternatively, the Defendants have moved to strike the amended complaint pursuant to Fed. R. Civ. P. 12(e), claiming that Davenport did not file the pleading which was sufficiently in compliance with the requirements of the March 12th directive. The Defendants also seek the dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6), asserting therein that Davenport had failed to state a claim upon which relief can be granted. Additionally, these movants have asked the Court to impose non-monetary sanctions against

---

- Office of Geological Survey, Walter D. Danyluk, District Supervisor; (3) Michigan D.E.Q. - Office of Geological Survey, David Bechler, Senior Geologist; (4) McConnell & Scully, Inc. of Homer, Michigan - Kevin Smith, Site Superintendent; (5) Bigard & Huggard Drillers of Mount Pleasant, Michigan,. Steve Bigard, President; and (6) Cementrite Services, Inc., Mount. Pleasant, Michigan -. Pat Jarman, President. The record in this cause indicates that Davenport's claims against Danyluk and Bechler have been dismissed. However, the Court, while denying the other parties' motions to dismiss, granted their motions for a more definite statement.

Davenport which, if granted, would (1) prevent him from directly communicating with them, and (2) require him to transmit all future correspondence to them only through their counsel of record. For the reasons the reasons that have been set forth below, the Court denies the Defendants' motions to dismiss on grounds that the complaint was filed untimely. However, the Court, believing that the movants' other requests have merit, grants their motions to (1) strike the amended complaint, (2) dismiss the issues therein because of Davenport's failure to state a claim, and (3) impose sanctions upon him as authorized by Fed. R. Civ. P. 11.

I.

In their motions, the Defendants initially argue that the Court should dismiss this case because Davenport had failed to file his amended complaint in a timely manner. Rule 12(e) of the Federal Rules of Civil Procedure states that "[i]f the court orders a more definite statement and the order is not obeyed . . . within the time the court sets, the court may strike the pleading or issue any other appropriate order." Additionally, Fed. R. Civ. P. 41(b) provides that if a plaintiff fails to comply with a court order, the defendant may move to dismiss the action or any claim against it. *See Torras Herreria y Construcciones, S.A. v. M/V Timur Star*, 803 F.2d 215, 216 (6th Cir. 1986). However, the dismissal of a cause of action on the basis of this Rule is such a drastic remedy that it should be imposed only in extreme circumstances. *Wu v. T. W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

Rule 6(d) of the Federal Rules of Civil Procedure provides that, when service is made pursuant to Fed R. Civ. P. 5(b)(2)(C), (D), (E), or (F), an additional three days shall be added to the period of time in which a party must act. Here, the record suggests that Davenport had transmitted his pleadings in this action to the Court and the parties by first class mail through the United States

3

Postal Service from his last known address in Statesville, North Carolina.[3] As such, his pleading qualified for an extension of the filing deadline by three additional days. *See Corsetti v. Phillips*, Case No. 1:05-CV-794, 2009 WL 579360, at *1 (W.D. Mich. March 5, 2009) (additional 3 days are added to time for service by mail under Rule 6(d)). In its order of March 12th, the Court directed Davenport to file an amended complaint within thirty days from the date of the order. Under these circumstances, the Defendants assert that he, though having until April 12th to file his complaint, failed to do so. However, Fed. R. Civ. P. 6(d) authorizes a court to grant such litigants as Davenport an additional three days to undertake necessary steps with which to advance their positions. Thus, by virtue of this Rule, Davenport's filing deadline was extended to April 15th – a deadline that he met by submitting his pleading on April 13th. Accordingly, the Defendants' motion to dismiss due to untimely filing must be and is denied.[4]

II.

In the alternative, the Defendants contend that Davenport failed to sufficiently clarify his complaint in the manner as ordered by the Court. Therefore, they submit that the amended complaint should be stricken under Rule 12(e) of the Federal Rules of Civil Procedure which

---

[3] Fed. R. Civ. 5(b)(2)(C) provides that: "[a] paper is served under this rule by ... mailing it to the person's last known address — in which event service is complete upon mailing."

[4] Notwithstanding this analysis, Davenport contends that he mailed his amended complaint to the United States District Court office in Bay City, Michigan on April 7th, and provided a confirmation number from the United States Postal Service which indicated that the amended complaint was received and acknowledged on April 12th. The address provided by Davenport is not a recognized address for mailing documents to the Court. Moreover, the delivery confirmation information that he provided to the Court has created some confusion as to how and when the amended complaint was actually received. To avoid any further confusion, Davenport is directed to address all future filings which relate to this case as follows: United States District Court for the Eastern District of Michigan, Clerk's Office, Theodore Levin U.S. Courthouse, 231 West Lafayette Boulevard, Room 564, Detroit, Michigan 48226.

provides that the Court may "strike [a] pleading or issue any other appropriate order" should a party fail to obey its order for a more definite statement.  Thus, while dismissal or other appropriate action is not a mandatory measure, "if the court feels that a party has not satisfied an order to provide a more definite statement, the court may order dismissal or such other remedy 'as it deems just.'"*Rentos v. Oce-Office Systems*, No. 95 CIV. 7908 LAP, 1996 WL 737215, at *4 (S.D.N.Y. Dec. 24, 1996) (citing *Delta Education, Inc. v. Langlois*, 719 F. Supp. 42 (D.N.H. 1989)).  For example, courts have granted motions to strike complaints and dismiss actions under Rule 12(e) for failure to "at a very minimum . . . cure the defects that rendered the original complaint 'vague and ambiguous.'" *Shallal v. Gates*, 254 F.R.D. 140, 143 (D.D.C. 2008).

To state the obvious, the striking of a complaint pursuant to Fed. R. Civ. P. 12(e) has the effect of foreclosing any "inquiry into the merits of the action." *Kratage v. Charter Tp. of Commerce*, 926 F. Supp. 102, 103 (E.D. Mich.,1996).  As a result, courts are hesitant to grant motions to strike pursuant to Rule 12(e). *See Rentos v. Oce-Office Systems*, No. 95 CIV. 7908 LAP., 1996 WL 737215, at *4 (S.D.N.Y. Dec 24,1996). *See also Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) ("[T]he action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice.").  While the Court ultimately has broad discretion to strike a pleading, motions to strike are generally disfavored and infrequently granted because an application for relief proposes such a drastic remedy. *See L and L Gold Associates, Inc. v. American Cash for Gold, LLC*, No. 09-10801, 2009 WL 1658108, at *1 (E.D. Mich. June 10, 2009) *(*citing *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000)).

On March 12th,  the Court ordered Davenport to file an amended complaint that would  (1)

outline the legal bases for his belief that this Court has jurisdiction over his claims, (2) specify the nature of his interest in the property at issue, (3) identify the parties who plugged his well, as well as the circumstances relating to the challenged tort (i.e., plugging), (4) explain the relationship, if any, among the parties who were named in his original complaint, (5) set forth those facts that which will support his claims against the Defendants, (6) state the nature of each Defendants' alleged liability, and (7) point out with reasonable specificity how each Defendants' alleged wrongful conduct caused him to sustain his claimed damages. (Order at 9).

Davenport appears before this Court as a *pro se* litigant. Accordingly, a less stringent standard is applied by the Court whenever it evaluates his pleadings as opposed to those drafted by a member of the bar. As such, his amended complaint must be liberally construed by the Court when it seeks to determine whether the pleadings adequately state a claim upon which relief can be granted. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, the leniency that is generally afforded to *pro se* litigants is not limitless. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Furthermore, if the *pro se* litigant is (1) aware of the potential deficiencies in the pleading, (2) given a reasonable opportunity to remedy the defects, and (3) unsuccessful in making the requisite corrections, his/her *pro se* status does not provide the Court with any legitimate basis for treating him/ her more generously than a party who is represented by counsel. *Id*

Any *pro se* party who has made a good faith effort to comply with a directive from the court to submit a more definite statement, but has fallen short in the attempt, may be afforded another opportunity to craft a response. S*ee Pardee v. Moses*, 605 F.2d 865, 866-67 (5th Cir. 1979). However, Davenport has been given multiple opportunities and warnings to articulate his claims

more clearly. Through the passage of several pleadings in the form of motions and replies, as well as an order from the Court, Davenport (1) possessed full knowledge of what was being asked of him, (2) was aware of the relief sought in the various motions by his adversaries, and (3) had an ample opportunity to respond. *Compare Schaedler v. Reading Eagle Publication, Inc.*, 370 F.2d 795, 798-799 (3rd Cir. 1967) ("although the plaintiff was given an opportunity to amplify the complaint when the motion for a more definite statement was granted, he was given no chance to augment his pleading following the motion to dismiss.").

Davenport's amended complaint appears to comply with the March 12th order in only a few respects. In response to the request from the Court that he specify the nature of his property interest in the well, Davenport states that he is a 60% owner of the Shirley Mae Davenport #4-2 well, and that he conveyed a 5% working interest in the well to each of his eight children, including mineral rights. He also addresses the Roach Defendant's motion to clarify by asserting that he is suing Tom Roach only in his individual capacity. Aside from those admissions, Davenport does not substantially address any of the other requests that were ordered by the Court. Moreover, his amended complaint is generally as confusing and unclear as the original complaint.

Additionally, Davenport's amended complaint also fails to (1) respond to the request from the Court to justify his position relating to the issue of jurisdiction, (2) explain the relationships, if any, between the parties who were named in the original complaint, (3) state the nature of the Defendants' alleged liability, or (4) articulate how their allegedly wrongful conduct caused him to sustain $24 million in damages. Furthermore, the amended complaint does not (1) identify the parties who allegedly plugged his well, or (2) describe the circumstances with any reasonable specificity which surrounded the claimed plugging. More specifically, the amended complaint does

7

not allege any substantive facts that support Davenport's claims against any of the Defendants. In his most direct acknowledgment of the order from the Court, Davenport states:

> A more definitive statement of my claims under Fed. R. Civ. P. 12(e) against all defendants are not at all so vague or ambiguous that all parties cannot reasonably prepare a response to the court ... [t]he "Expert Witness Well" as presently installed and the Thomas L. Roach III "Lying Well" as per MDEQ records ... are self explanatory to a grade school student and should be comprehensible to a reasonably alert defendant and his lawyers as well as court officers.

Amended Complaint, p. 3.

Davenport has added very little to his claims since the Court required him to provide a more definite statement. He has reworded his accusations, and added some more vague allegations which suggest the existence of a collusion between Tom Roach and the Michigan Department of Environmental Quality ("MDEQ"). These minor changes are not sufficiently in compliance with the March 12th directive, and certainly fail to "cure the defects that rendered the original complaint 'vague and ambiguous.'" *Shallal*, 254 F.R.D. at 143. As such, the Court must, and does, grant the Defendants' motion to strike the amended complaint on this basis.

III.

Even if the Court had been inclined to deny the motion to strike for failure to provide a more definite statement, the claims that are now pending would be dismissed based upon the Defendants' challenge to the legal sufficiency of Davenport's allegations under Rule 12(b)(6).

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief [in order to] give the defendant fair notice of what the . . . claim is and the grounds upon which is rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). Plaintiffs are not required to provide "detailed factual

allegations" in their complaints, but they are required to provide more than unfounded assertions and legal conclusions. *Twombly*, 550 U.S. at 555. Therefore, a complaint that offers only "labels and conclusions," or "naked assertion[s]" devoid of "further factual enhancement," are not sufficient. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Significantly, the complaint must supply more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

In evaluating the propriety of a dismissal under Rule 12(b)(6), the Court must consider the pleadings in a light most favorable to the plaintiff and treat the factual allegations in the complaint as true. *See Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir.1993), cert. denied 510 U.S. 1177 (1994) (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980); *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir.1989)). Complaints must contain sufficient factual information that, when accepted as true, state a claim that is "plausible" on its face, *Iqbal*, 129 S. Ct. at 1950, raising the right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. Because Davenport is proceeding *pro se*, his complaint must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520-21(1972). However, even a *pro se* plaintiff is still required to state claims with enough specificity to give the defendants notice of their alleged wrongdoings, and "the trial and appellate courts should not have to guess at the nature of the claim asserted.." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167 (6th Cir.1975)).

In its March 12th order, the Court noted that Davenport's original complaint did not satisfy the pleading standards identified by *Iqbal* and *Twombly* - so much so that the Court would have been justified in granting each of the Defendants' motions to dismiss at that time. Davenport's amended complaint does little to add any substance to the bare legal conclusions within the original

complaint, thus leading to a nearly identical analysis.

In his amended complaint, Davenport claims that Tom Roach engaged in "arbitrary and capricious conduct" to effect the destruction of Davenport's well for his own personal financial gain.[5] Although his argument is difficult to follow, Davenport seems to be suggesting that because Tom Roach allegedly owns the lease to a nearby well, and because Tom Roach's well was allegedly not plugged by the MDEQ, he must have had a hand in the MDEQ's decision to plug Davenport's well.[6]

Further, Davenport maintains that in 1986 Tom Roach hired Robert Manners to be "his man" in Michigan and Ralph McLure to be his "bag man," both of whom engaged in various business transactions involving the purchase and sale of mineral leases and the drilling of wells in Michigan until 1992. It is not clear how these business transactions, none of which appear to have any relationship to Davenport or his land and transpired more than ten years before he began to drill his own well, support any claim for relief. Nonetheless, Davenport contends that he drilled his own well in 2003, and that shortly thereafter Tom Roach (through Roach Oil) ordered various individuals to plug the well for his own "personal financial good." Davenport further alleges that Roach Oil "[paid] the bills of Robert J. Manners, William K. Roth, MDEQ personnel and the

---

[5]Throughout his amended complaint, Davenport refers to Roach Oil and Tom Roach in an interchangeable manner. Thus, while he did clarify in his amended complaint that he was suing Tom Roach in his individual capacity, functionally, it appears that Davenport is suing Tom Roach in his capacity as president of Roach Oil.

[6]Even if the MDEQ did plug Davenport's well, the plugging of underground oil and gas wells is a regulatory activity that falls well within the MDEQ's governmental authority. *See generally*, Michigan Administrative Code R 324.901 et seq., Department of Environmental Quality, Geological and Land Management Division, Oil and Gas Operations, Part 9, Plugging.

defendant contractors who destroyed [his] gas well."[7]

Davenport fails to explain how the Defendants would benefit from the "destruction" of his well. Although he alleges that Tom Roach (through Roach Oil) directed a "team effort" to intentionally destroy the well for his own personal financial gain, Davenport has not explained (1) the relationships or the connections, if any, between the Defendants, or (2) how Tom Roach would benefit from the destruction of another well. The closest Davenport comes to linking the two wells appears in paragraph seventeen of the amended complaint. There, Davenport alleges that Tom Roach sought to secure all of the drilling units on the shared gas deposit over which both of the wells sit in order to receive a "unity classification" from the MDEQ. He appears to have alleged that this "unity classification" would override the conditions of Davenport's own lease, and lead to a more profitable well for Tom Roach. Even viewing the pleading in a light most favorable to Davenport and treating all of these factual allegations as true, it is still difficult to discern the nature or the scope of the claimed wrongdoing by Tom Roach or Roach Oil. Davenport fails to explain the significance, if any, of the term, "unity classification," or how its acquisition by Tom Roach would constitute a violation of his rights for which he is entitled to damages. Although Davenport may feel wronged by the closure of his well, he has failed to articulate why or how Tom Roach's business decisions to buy and sell leases would entitle him to a legal claim for relief.

In support of his allegations against Tom Roach and Roach Oil, Davenport relies heavily on his own personal hand-drawings of the wells at issue, which he has provided to the Court on

---

[7] Davenport has not filed lawsuits against the other men who are mentioned in his amended complaint, to wit: Robert Manners, Ralph McLure and William Roth. It is also unclear who they are, what tasks they performed or why Tom Roach would pay them to do so.

11

numerous occasions. Liberally construing his pleading, it appears Davenport is alleging that Tom Roach created a false representation of his own well and filed it with the MDEQ as a justification for the destruction of Davenport's well. He claims that his hand-renderings depict Tom Roach's well (1) as it is currently represented on file with the MDEQ, and (2) as he believes it actually looks underground. However, Davenport has not provided any facts that would establish when or why a falsified representation of the well was filed with the MDEQ, and to what extent it adversely affected his property interests.

Davenport's allegations in his amended complaint are substantially similar to the allegations in his original complaint and fail to explain the relationship between Roach, Roach Oil and the MDEQ, or put forth any plausible facts to support the contention that the MDEQ plugged his well for the personal gain of a private enterprise. Even when considered in a light that is most favorable to Davenport, it is difficult to identify the nature of Roach Oil or Tom Roach's wrongdoing, or how any alleged misconduct on their part caused him to sustain $24 million in damages. Based on these allegations, the Court cannot determine which, if any, legal rights have been violated by the Defendants, or whether any alleged violation implicates a federal claim for relief enforceable by Davenport.

Similar shortcomings exist with regard to Davenport's attempt to plead claims against the Cementrite Defendants and the Bigard Defendants. The amended complaint never mentions Pat Jarman or Cementrite Services, Inc. by name, let alone advances a viable theory for liability. Furthermore, there is only one sentence in the document that alleges any wrongdoing by Steve Bigard. It accuses him of (1) being hired by Thomas Roach as a drilling contractor, and (2) colluding with Roach to install the well plug over Davenport's objections. Unfortunately, this

claim is no more specific than what appeared in Davenport's response to the Bigard Defendants' original motion to dismiss. As such, it continues to be grossly inadequate.

Thus, the Court concludes - as it did before - that even when viewing Davenport's complaint in a light that is most favorable to him as a *pro se* litigant, the pleadings provide no guidance as to the precise legal nature of his claims, or identify plausible facts to show why he is entitled to recover $24,000,000 in relief. In light of these deficiencies, the Defendants' request to dismiss Davenport's lawsuit is granted.

IV.

Finally, the Defendants, Roach Oil Company and Thomas Roach, seek Rule 11(b) sanctions against Davenport for that which they perceive as threatening behavior. Specifically, both of them note that they - not their counsel - received a letter from Davenport which included the following language:

> "The [Jehovah] of the universe has been watching these proceedings and with honor and justice has instructed the archangel Gabriel to alert Thomas L. Roach III . . . to [his] wrongful, unjust endeavor. Should this demand be unmet . . . the archangel Michael will administer the initial punishment against these men, their families and their institutions with justice and honor to [Jehovah]. The God of the universe will not be pushed into a corner like a snarling tiger by Thomas L. Roach III . . . [Jehovah] will be honored and glorified thru this encounter of justice."

On this basis, they ask the Court to direct Davenport to cease and desist from initiating all future communications with them.

Under Fed. R. Civ. P. 11(b)(1), every attorney or unrepresented party certifies that any paper "present[ed] to the court" is not being offered "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ." Although the policy underlying this provision applies here, Davenport's conduct technically is not covered by Rule 11(b)(1) since -

13

as the Defendants acknowledge - his letter was not filed directly with the Court.

Nevertheless, the Court deems it appropriate to grant the requested relief based on its inherent authority to sanction bad-faith conduct in litigation. *Jones v. Illinois Central R. Co.*, 617 F.3d 843 (6th Cir. 2010) (citing *Chambers v NASCO*, 501 U.S. 32, 49 (1991)). In *Chambers,* the Supreme Court emphasized that a court can invoke its inherent power to sanction inappropriate conduct by a litigant even if procedural rules exist to penalize the same conduct. 501 U.S. at 50. Thus, where as here, the conduct at issue is not adequately covered by another sanctioning provision,[8] it may look to this power for authority to act. *Id.* ("if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

Here, it appears that Davenport facially engaged in bad-faith conduct by sending an indisputably menacing letter to his adversaries.. Davenport declared that if certain demands were not met, "the archangel Michael" would administer punishment not only against the Roach Oil litigants, but upon their families and businesses as well. The Court perceives no legitimate basis for using such conspicuously offensive language. Further, the Court cannot and will not tolerate the use of aggressive tactics by any of the litigants before it. As such, the Court will grant the Defendants' request for non-monetary sanctions. Accordingly, Davenport is directed to cease and desist from engaging in any direct communications with the Defendants, and must send all future correspondence only to the Defendants' counsel and/or to the Court. Furthermore, he must refrain

---

[8] Aside from Rule 11, another source of authority to impose sanctions lies in 28 U.S.C. § 1927. Yet, by its very terms, that provision only allows court to impose penalties upon "any attorney or other person admitted to conduct cases . . . ." Thus, § 1927 has no applicability here to the imposition of sanctions against a *pro se* litigant.

14

from any conduct that is designed to intimidate the other parties to this litigation.

V.

For the reasons that have been stated above, the Defendants' motion to dismiss the amended complaint due to untimely filing is denied. However, the Court grants the Defendants' motion to strike the amended complaint, as well as their motion to dismiss for failure to state a claim. The Court also grants the Defendants' motion for the imposition of non-monetary sanctions. This lawsuit is dismissed with prejudice.

IT IS SO ORDERED.

Dated: February 11, 2011          s/Julian Abele Cook, Jr.
       Detroit, Michigan            JULIAN ABELE COOK, JR.
                                      United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participant Coye Davenport, 517 Bristol Drive, Statesville, NC 28677 on February 11, 2011.

                                                     s/ Kay Doaks
                                                     Case Manager